ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM.*
This disciplinary matter arises from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Meyer Sabludowsky, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

98-DB-073

Respondent represented Helen Barrow in a personal injury case that settled for $8,645.45. On January 29, 1996, respondent deposited the settlement check into his trust account. The following day, respondent accounted for the settlement to his client and retained the sum of $1,727 to pay Uptown Physical Medicine and Rehabilitation, a third-party medical provider. However, respondent did not pay the medical provider until February 24, 1997. The ODC also alleges that between July 31, 1996 and August 15,'1996, and between August 21, 1996 and February 23, 1997, the balance in respondent’s trust account fell below the amount with which he had been entrusted to pay the medical provider.

U99-DB-111

Count I

Respondent represented Keyauka Payne in a personal injury case that settled for $6,148.75. Respondent also represented Theresa Payne in the same matter, and her case settled for $6,374.25. In November 1995, respondent accounted for the settlements to his clients and retained the sums of $1,634 (Keyauka Payne) and $1,756 (Theresa Payne) to pay Uptown Physical Medicine and Rehabilitation, a third-party medical provider. However, respondent did not pay the medical provider until October 24, 1997. The ODC also alleges that between November 10, 1995 *1284 and October 24, 1997, the balance in respondent’s trust account fell below the amount with which he had been entrusted to pay the medical provider.

Count II

Respondent represented Paula Mer-cante in a personal injury case that settled for $1,500. In September 1996, respondent accounted for the settlement to his client and retained the sum of $819 to pay Uptown Physical Medicine and Rehabilitation, a third-party medical provider. However, respondent did not pay the medical provider until November 1, 1997. The ODC also alleges that between September 11, 1996 and November 1, 1997, the balance in respondent’s trust account fell below the amount with which he had been entrusted to pay the medical provider.
Respondent’s conduct in both sets of formal charges is alleged to violate Rules 1.3 (lack of diligence), 1.15 (safekeeping property of a client or third person), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
Following its investigation, the ODC filed formal charges against respondent in 98-DB-073. Respondent answered the formal charges and admitted the factual matters set forth therein, but denied any intentional misconduct. The matter proceeded to a hearing before the hearing committee, which submitted its report to the disciplinary board. However, in the interim between submission of the matter to the disciplinary board and the issuance of the board’s recommendation, the ODC filed a second set of formal charges against respondent in 99-DB-lll. Upon joint motion of the parties, this court ordered the disciplinary board to issue a single recommendation of discipline in connection with both sets of formal charges.[1] Thereafter, respondent and the ODC entered into a joint stipulation of facts in 99-DB-lll, and the two matters were consolidated and presented to the disciplinary board for oral argument.

Disciplinary Board Recommendation

In its report in the consolidated matter, the board found that respondent admittedly violated Rules 1.3, 1.15, and 8.4(a) of the Rules of Professional Conduct. The board found there was no violation of Rule 8.4(c), as the record indicates that respondent acted in good faith when he attempted to renegotiate his clients’ medical expenses. The board concluded respondent’s conduct violated duties owed to his clients, and that respondent acted knowingly and with a high degree of negligence. Furthermore, respondent did not intentionally put his clients at risk of harm, although the board noted the potential for injury is great when the balance in an attorney’s trust Raccount falls below the amounts withheld from settlements to pay the medical providers.
The board identified several mitigating factors present in the instant case, including restitution, full disclosure and cooperation in the disciplinary proceedings, absence of dishonest or selfish motive, and remorse. The aggravating factors include prior discipline,[2] substantial experience in the practice of law (admitted 1937), and pattern of misconduct.
*1285 Relying upon Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the board determined that the baseline sanction for respondent’s misconduct is a three-year suspension. The board found respondent is guilty of a high degree of negligence, although no other fraudulent acts were committed in connection with this misconduct. Secondly, the potential for injury to respondent’s clients existed because their medical bills were not promptly paid. Finally, the medical provider, although eventually paid, was deprived of its funds for over a year in the Barrow and Mercante matters, and for' almost two years in the two Payne matters. Nevertheless, given the mitigating factors involved, the board concluded that a downward deviation to a lesser period of active suspension is appropriate.
Accordingly, the board recommended that respondent be suspended from the practice of law for thirty-six months, with twenty-four months deferred, followted by two years of supervised probation with conditions.[3] The board further reeom-mended | ¡¡that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
The record supports a finding that respondent withheld sums from his clients’ personal injury settlements to pay medical expenses to a third-party medical provider. Respondent attempted to renegotiate the sums due by his clients and delayed payment to the medical provider for over a year in the Barrow and Mercante matters, and for almost two years in the two Payne matters. Although the medical provider was eventually paid in full in the four matters at issue, respondent’s actions deprived the medical provider of funds to which it was entitled. Moreover, during the period of time in which respondent was entrusted with his clients’ funds, the balance of his trust account dropped below *1286 the amount he held on the third party’s behalf. This conduct by respondent, while perhaps not intentional, is in violation of Rules 1.3, 1.15, and 8.4(a) of the Rules of Professional Conduct.
In determining the appropriate sanction for respondent’s misconduct, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
After considering the aggravating and mitigating factors, we conclude a three-year suspension from the practice of law, with two years deferred, followed by supervised probation for a period of two years, is an appropriate sanction.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is ordered that Meyer Sabludowsky be suspended from the practice of law in Louisiana for a period of three years. It is further ordered that two years of this suspension shall be deferred. Following -the active portion of his suspension, respondent shall be placed on supervised probation for a period of two years, subject to the conditions recommended by the disciplinary board. All costs and expenses in the matter are assessed against respondent in accordance with Supreme |7Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Marcus, X, not on panel. Rule IV, Part II, § 3.

. In connection with 98-DB-073, the disciplinary board recommended a two-year suspension, with eighteen months deferred, followed by two years of supervised probation with specified conditions. The ODC objected and the matter was set on this court's docket for oral argument. However, in light of the parties' joint motion, this court did not act on the matter, and instead remanded the case to the disciplinary board for consolidation with the charges in 99-DB-l 11.

. In 1994, respondent was suspended for ninety days for failing to timely pay a third-party medical provider and negligently commingling client funds. In re: Sabludowsky, 94-0306 (La.4/7/94), 635 So.2d 1143.

.The board recommended the following conditions:
1. Respondent will be supervised by Robert S. Angelico, a probation monitor within the Board's approved list of monitors for the New Orleans area, who is a Certified Public Accountant and an attorney who will assist Respondent in developing and using control systems for managing cases, answering correspondence from clients and third parties, and the management of Respondent’s client trust and office accounts to ensure that the two accounts comply with the Rules of Professional Conduct, particularly Rule 1.15. In the event that Mr. Angelico is unable to serve as a probation monitor, the Board will appoint another CPA/JD from the New Orleans area.
2. The probation monitor will meet with Respondent monthly to review and reconcile Respondent’s office and client escrow accounts. The probation monitor has the discretion to require an audit of these accounts if necessary.
3. Respondent will annually attend six hours of CLE in the area of small office practice and trust account management (if offered during the two year period of probation) such as those courses offered by the LSBA, Gilsbar's Office of Loss Prevention or another approved CLE provider.
4. Respondent will fully comply with the Rules of Professional Conduct and will promptly and fully cooperate with the Office of Disciplinary Counsel and his probation monitor for requests for information.
5. The probation monitor will immediately inform the Office of Disciplinary Counsel if, at any time during the period of probation, Respondent’s compliance with any condition of probation is unsatisfactory or there is a potential of harm to the public. The probation monitor will render reports every three months to the Office of Disciplinary Counsel.
6. Respondent will pay all costs of these proceedings on a payment plan to be entered into with the Board Administrator within thirty days of issuance of the Supreme Court’s order of final discipline.
7. Any violation of the terms of probation will be handled in accordance with the procedures set forth in Rule XIX, Appendix C, Procedural Rules of Probation Monitors.